# CONTRATO DE LINEA DE CREDITO ROTATIVA

Este **CONTRATO DE LÍNEA DE CRÉDITO ROTATIVA**, (en adelante el "**Contrato**"), con fecha 28 de marzo-------- de 2008, se lleva a cabo entre **CARLOS ALVAREZ MENDEZ, mayor de edad, soltero, propietario y vecino de San Juan, Puerto Rico,** (en adelante el "**Deudor**"), quien además comparece como **PRESIDENTE DE INVERSIONES ALVEL, INC., corporación garantizadora, la cual está organizada y existente bajo las leyes del Estado Libre Asociado de Puerto RIco**, facultades que demostrará dónde y cuando fuere menester hacerlo, (en adelante el "**Garantizador**") y **EUROBANK**, una corporación bancaria organizada y existente bajo las leyes del Estado Libre Asociado de Puerto Rico, con oficinas principales en San Juan, Puerto Rico, representado por **ALFREDO AMADOR AMADOR**, mayor de edad, casado, ejecutivo y vecino de Guaynabo, Puerto Rico, (en adelante el "**Banco**").

## PREÁMBULO

**PRIMERO:** El Deudor (según definido arriba) ha solicitado de Eurobank una linea de credito rotativa por la suma total de **UN MILLON SETECIENTOS MIL DOLARES ($1,700,000.00)**, siendo el propósito utilizar los fondos provenientes del financiamiento del mismo para **(i) cancelar obligaciones comerciales con Eurobank números 964002852, 964002752 y 964003169, (ii) capital de trabajo y (iii) satisfacer los costos relacionados con el mismo.**

**SEGUNDO:** Que el Garantizador está dispuesto a garantizar al Banco (según definido arriba) el cumplimiento específico de todas las obligaciones incurridas por el Deudor con el Banco, mediante la presente facilidad de crédito, por entender que el mismo es en los mejores intereses del Deudor y de el Garantizador.

**POR TANTO:** el Banco, el Deudor y el Garantizador (según definido arriba) acuerdan contratar la facilidad de crédito que se describe más adelante, sujeto a, y de acuerdo con, los términos y condiciones que aquí se establecen.




1.  **Definiciones**. Los términos no definidos en el texto del Contrato (incluyendo, sin limitación alguna, el preámbulo del mismo) tendrán los respectivos significados que se indican en el Anejo 1.1 de este Contrato, copia del cual se acompaña y se hace formar parte del presente contrato.

2.  **La Facilidad de Crédito**.

2.1  Adelantos. (a) El Banco acuerda hacer, sujeto a los términos y condiciones de este Contrato hacer disponible al Deudor, de tiempo en tiempo durante el término comenzando en la Fecha de Cierre hasta, pero no incluyendo, **31 DE DICIEMBRE DE 2008** (el "**Término Corriente**") o durante cualquier Término de Renovación aplicable, préstamos (cada uno un "**Adelanto**") bajo una linea de crédito rotativa (la "**Linea de Crédito Rotativa**") para ser usados por el Deudor como capital operacional, sujeto a que el Banco no tendrá obligación ninguna de hacer Adelantos luego de la Fecha de Expiración (según definido más adelante) o si al tiempo de desembolsar dicho Adelanto la suma adeudada de principal de todos los Adelantos (incluyendo Adelantos Pendientes) exceda u excedería luego del desembolso de dicho Adelanto, de **UN MILLON SETECIENTOS MIL DOLARES ($1,700,000.00),** (el "**Compromiso**"). Sujeto a los límites del Compromiso, el DEUDOR podrá tomar prestado, prepagar y tomar prestado nuevamente desde la fecha de hoy hasta la Fecha de Expiración.

(b) Cuando se expire el Término Corriente, sujeto a los términos y condiciones de este

1

Sr. Carlos Alvarez Méndez
Contrato de Linea de Crédito Rotativa

Contrato, esta facilidad de crédito podrá ser extendida, a la discreción absoluta del Banco, por cualquiera términos subsiguientes (cada uno un "**Término de Renovación**") como puedan ser acordados por escrito entre el Deudor y el Banco por lo menos treinta (30) días antes de la expiración del término aplicable. A la expiración del Término Corriente o cualquier Término de Renovación Aplicable (en adelante, la "**Fecha de Expiración**"), todas las obligaciones del Deudor bajo este Contrato, el Pagaré y los otros Documentos Legales se considerarán vencidos, pagaderos y exigibles sin presentación, protesto, demanda, notificación o aviso.

2.2.   Desembolsos de los Préstamos. (a) Sujeto al cumplimiento de las condiciones precedentes de la sección 4 de este Contrato, y sujeto a los otros términos y condiciones de este Contrato, el Banco desembolsará los Adelantos para ser usados conforme con este Contrato.

(b) Todas las cantidades adeudadas por el Deudor para con el Banco bajo este Contrato y cualquier suplemento al mismo serán cargados a una cuenta a nombre del Deudor en los libros del Banco (la "**Cuenta de Préstamo**"). Dicha cuenta será considerada correcta y aceptada por el Deudor, siendo la misma una determinación final en relación al Deudor, excepto en casos de errores claramente evidentes..



2.3.   Intereses y Repago. El balance insoluto de principal de todos los Adelantos será evidenciado por un pagaré del Deudor a la orden del Banco sustancialmente en la forma del **Anejo 1.2** (como dicho pagaré podrá de tiempo a tiempo ser extendido, enmendado, suplementado o de otra manera modificado, el "Pagaré"). El balance insoluto de principal de todos los Adelantos será pagadero en su totalidad en lo antes de ocurrir: **(a) A LA PRESENTACION** del Pagaré o (b) la Fecha de Expiración. Los intereses devengados sobre el principal se pagarán mensualmente el primer día de cada mes comenzando el 28 DE ABRIL-----  DE 2008 y así sucesivamente hasta e incluyendo la Fecha de Vencimiento. El balance insoluto del principal devengará intereses diariamente al **UNO POR CIENTO (1%)** sobre la tasa de interés diaria preferencial fluctuante ("Eurobank Prime Rate").



2.4   Tasa de Interés por Incumplimiento. De ocurrir cualquier Causa de Incumplimiento (según se dispone más adelante en este Contrato), el balance insoluto de principal devengará, inmediatamente y sin necesidad de notificación previa, intereses a razón de una tasa de interés equivalente a un **TRES POR CIENTO (3%)** sobre las tasa de interés pactada en la **Sección 2.3.** del Contrato (la "**Tasa de Interés por Incumplimiento**"). Esta Tasa se aplicará desde el momento en que ocurra la Causa de Incumplimiento hasta la misma sea subsanada en forma y sustancia a la entera satisfacción y discreción del Banco.

2.5.   Pagos y Computaciones.  (a) El Deudor deberá hacer cada pago bajo este Contrato, bajo el Pagaré o cualquier otro Documento de Préstamo no más tarde de las 1:00 p.m. (hora de San Juan, Puerto Rico) en el día que dicho pago venza en moneda legal de los Estados Unidos de América al Banco en cualquiera de sus sucursales en Puerto Rico, o en cualquier otro sitio que el Banco haya designado por aviso escrito al Deudor, en fondos inmediatamente disponibles. El Deudor pagará todas las cantidades adeudadas, sin derecho de compensación o reclamación contra el Banco, y sin deducciones por contribuciones o gastos de ningún tipo. Los pagos, se aplicarán primero a cualquier interés acumulado y no pagado en orden del más antiguo al más reciente, luego a los cargos contemplados en el contrato (incluyendo cualquier pago que haya

2

Sr. Carlos Alvarez Méndez
Contrato de Linea de Crédito Rotativa

tenido que hacer el Banco a nombre del Deudor bajo las disposiciones de este contrato) que no hayan sido pagados, y luego al principal vencido o próximo a vencer del Préstamo, también del más antiguo al más reciente. Esto incluye los pagos realizados por el Banco en el ejercicio de su derecho bajo este contrato de cargar o debitar dichas sumas en cualquier cuenta o depósito que el Deudor mantengan en el Banco o sus afiliadas.

(b) El Deudor autoriza al Banco a hacer los débitos correspondientes directamente contra la cuentas que el Deudor mantenga en el Banco, y el Banco notificará al Deudor en el evento de dichos debitos. Los intereses se calcularán sobre una base de interés simple utilizando una fórmula cuyo numerador es el número exacto de días naturales transcurridos y el denominador de 365 días.

2.6. Pagos en Días No-Laborales. Siempre que cualquier pago bajo este Contrato o bajo cualquiera de los Pagarés deba de hacerse en una fecha que no sea un Día Laborable, dicho pago deberá hacerse el próximo Día Laborable.

2.7 Pago Moroso. Por cada pago que esté en mora por más de diez (10) días, el Deudor se obliga a pagar un cargo igual al CINCO POR CIENTO (5%) del monto del pago moroso.



2.8. Costos Adicionales. En cualquiera de las eventualidades de que debido a (i) la vigencia de, o cualquier cambio (incluyendo pero no limitado, a cualquier cambio de imposición o aumento de cualquier requisito de reserva o aumento del seguro de depósito) en o interpretación de cualquier ley o reglamento, o (ii) el cumplimiento de cualquier guía formal o requerimiento de cualquier banco central o autoridad gubernamental (independientemente de tener o no autoridad de ley), exista como resultado cualquier aumento en el costo del banco del acuerdo aquí contemplado en este contrato, de realizar, mantener y llevar a cabo adelantos de fondos al Deudor, entonces el Deudor habrá de tiempo en tiempo, a requerimiento del Banco, pagarle al Banco sumas de dinero adicional suficientes para sufragarle al Banco el aumento de los costos y/o gastos del Banco. El certificado con un detalle razonable de las cantidades del aumento de los costos del Banco sometido al Deudor, en ausencia de error manifiesto, será exigible y válido del acuerdo para todos los propósitos legales.

3. **Garantías y Colateral**.

3.1 Las obligaciones del Deudor bajo este Contrato, el Pagaré y los otros Documentos de Préstamo estarán garantizados mediante la siguiente Colateral:

> 1. Garantía Ilimitada y Continua de la Corporación Garantizadora otorgada en esta fecha, por la Corporación Garantizadora (La "Garantía Ilimitada y Continua");
>
> 2. Pagaré Hipotecario pagadero a la orden de Eurobank, o a su orden, por la suma principal agregada de $768,000.00 con intereses al 12% anual y vencedero a la presentación; constituído por el Garantizador;
>
> 3. Primera Hipoteca por $768,000.00 en garantía del Pagaré Hipotecario, constituida mediante la Escritura Número 98, otorgada el

3

Sr. Carlos Alvarez Méndez
Contrato de Linea de Crédito Rotativa

29 de abril de 2004, ante Nelson W. González Rosario;

4. Pagaré Hipotecario pagadero a la orden de Eurobank, o a su orden, por la suma principal agregada de $219,000.00 con intereses al Prime Rate y vencedero a la presentación; constituído por el Garantizador;

5. Primera Hipoteca por $219,000.00 en garantía del Pagaré Hipotecario, constituida mediante la Escritura Número 99, otorgada el 29 de marzo de 2004, ante Nelson W. González Rosario;

6. Pagaré Hipotecario pagadero a la orden de Eurobank, o a su orden, por la suma principal agregada de $213,000.00 con intereses al Prime Rate y vencedero a la presentación; constituído por el Garantizador;

7. Primera Hipoteca por $213,000.00 en garantía del Pagaré Hipotecario, constituida mediante la Escritura Número 100, otorgada el 29 de marzo de 2004, ante Nelson W. González Rosario;

8. Pagaré Hipotecario pagadero a la orden de Eurobank, o a su orden, por la suma principal agregada de $600,000.00 con intereses al 12% anual y vencedero a la presentación; constituído por el Garantizador;

9. Segunda Hipoteca por $600,000.00 en garantía del Pagaré Hipotecario, constituida mediante la Escritura Número 42, otorgada en esta fecha, ante este Notario Público;



10. Acuerdo de Gravamen y Contrato de Prenda de Pagaré(s) Hipotecario(s) ; otorgado por el Deudor y Garantizador;

11. Declaración(es) de Financiamiento; otorgada por el Deudor y Garantizador.



3.2    Los Contratos de Colateral se mantendrán íntegros y vigentes durante la existencia de este Contrato y hasta que el Deudor satisfaga en su totalidad las Obligaciones asumidas bajo los Documentos de Préstamo y durante cualquier extensión o renovación o conversión de los mismos. El Deudor y el Garantizador Prendatario reconoce y acepta que es la intención de las partes de este Contrato crear un gravamen asegurado ("security interest") a favor del Banco sobre el Colateral con el fin de garantizar el fiel cumplimiento de todas las obligaciones del Deudor bajo este Contrato y los otros Documentos de Préstamo.

**4.    Condiciones Precedentes al Desembolso del Préstamo.**

4.1    La obligación del Banco de hacer Adelantos (incluyendo el Adelanto inicial) bajo la Linea de Credito queda sujeta a las siguientes condiciones al momento de cada desembolso:

(a)    Que no exista una Causa de Incumplimiento bajo este Contrato o con respecto a

4

Sr. Carlos Alvarez Méndez
Contrato de Linea de Crédito Rotativa

cualquier otra Deuda del Deudor con el Banco o sus afiliadas, o una condición que, de no ser por el requisito de dar notificación y/o del transcurso del tiempo, constituya una Causa de Incumplimiento;

(b)  Que el Deudor haya cumplido con los convenios afirmativos y negativos en este Contrato;

(c)  Que las representaciones y garantías hechas por el Deudor y el Garantizador en este Contrato sean correctas y ciertas al momento de realizarse cada desembolso bajo el Préstamo;

(d)  Que el Deudor y el Garantizador hayan entregado al momento del cierre o del desembolso particular los documentos que requiera el Banco en la forma y con el contenido que sea satisfactorio para éste.

5.  **Representaciones y Garantías del Deudor y el Garantizador**.

5.1  Para inducir al Banco a entrar a este Acuerdo y hacer Adelantos, el Deudor por la presente le representa y garantiza al Banco que:

5.1.1 El otorgar este Contrato y los Documentos de Préstamo y cumplir con sus respectivos términos: (i) no causará que viole ninguna ley, reglamento, orden judicial, interdicto o sentencia aplicable; (ii) no causará que viole o incumpla los términos de cualquier contrato o acuerdo del cual sea parte y/o que afecte sus propiedades; (iii) no violará, ni será incompatible con, las cláusulas de su Certificado de Incorporación o de sus estatutos (de ser el Deudor una corporación) o de su acuerdo de constitución de sociedad o fideicomiso (de ser el Deudor una sociedad o fideicomiso); (iv) redundará en su beneficio; y (v) no resultará en su insolvencia;



5.1.2 No existe requisito de autorización, consentimiento, licencia, permiso, registro o presentación de tribunal o Entidad Gubernamental alguna, ni de ninguna junta o foro, para proceder al otorgar y cumplir con este Contrato y los otros Documentos de Préstamo;



5.1.3 No existe acción, demanda, procedimiento o reclamación ante ningún tribunal o Entidad Gubernamental, ni ante ningún otro foro, ni, de acuerdo con su mejor conocimiento, la posibilidad de tal, que pudiera afectar la condición financiera del Deudor y el Garantizador o sus propiedades, negocios, operaciones o activos;

5.1.4 Ninguna información, anejo o informe ofrecida al Banco en relación con la preparación, otorgamiento, y negociación de este Contrato y los otros Documentos de Préstamo, contiene declaraciones falsas u omite declarar algún hecho que pueda afectar la veracidad de dicha información, y no existen hechos que, individualmente o tomados junto con otros factores, puedan afectar adversamente la condición financiera del Deudor o sus propiedades, negocios, operaciones o activos;

5.1.5 Poseen todas las facultades, poderes y autorizaciones necesarias para otorgar este Contrato y los otros Documentos de Préstamo, para incurrir en las obligaciones estipuladas en este Contrato y en los otros Documentos de Préstamo, para tomar prestada la cantidad del Préstamo que se establece en este Contrato, para emitir el (los) Pagaré(s) que evidencia(n) dichas obligaciones, para utilizar los fondos obtenidos bajo el Préstamo para los usos aquí especificados, y para cumplir con los términos y

5

Sr. Carlos Alvarez Méndez
Contrato de Linea de Crédito Rotativa

condiciones contenidos en este Contrato, en el (los) Pagaré(s) y en los otros Documentos de Préstamo;

5.1.6 Este Contrato y los demás Documentos de Préstamo han sido debidamente autorizados por el Deudor y el Garantizador y constituyen obligaciones válidas y legales del mismo, exigibles contra éste de conformidad con sus respectivos términos;

5.1.7 No ha, y/o no tiene conocimiento de que ninguno de sus predecesores en interés hubiera, almacenado, generado, manufacturado, refinado, transportado, producido o tratado desperdicios tóxicos, desperdicios sólidos, desperdicios peligrosos o sustancias peligrosas en las propiedades del Deudor, en violación de cualquier disposición de ley, ordenanza, regla, reglamentación, orden, sentencia, decreto o permiso que fuera aplicable y/o que requiera alguna actuación para corregir alguna situación que conlleve un costo o gasto sustancial bajo las disposiciones de cualquier ley, ordenanza, regla, reglamentación, orden, sentencia, decreto o permiso que fuera aplicable. No han ocurrido, y/o no tiene conocimiento de que existan, derrames, descargas, filtraciones, emisiones, inyecciones, escapes, o liberaciones sustanciales o materiales de desperdicios tóxicos, desperdicios sólidos, desperdicios peligrosos o sustancias peligrosas, en las propiedades del Deudor o en el ambiente que rodea dichas propiedades. Los términos "desperdicios tóxicos", "desperdicios sólidos", "desperdicios peligrosos" y "sustancias peligrosas" tendrán el significado dispuesto en cualquier disposición de ley o reglamentación aplicable del Estado Libre Asociado de Puerto Rico, del Gobierno Federal o estatal o de un país extranjero, relacionadas con la protección del ambiente;



5.1.8 De ser aplicables o necesarias, posee todas las patentes, derechos sobre patentes, marcas, licencias, franquicias, autorizaciones, permisos y otros derechos necesarios para conducir sus negocios tal y como los conduce al presente, y como se propone conducirlos en el futuro, sin menoscabar o violar los derechos de terceros;

5.1.9 Ha cumplido con todas las leyes y reglamentos de las Entidades Gubernamentales con jurisdicción sobre sus negocios y no está incumpliendo ninguna orden, mandamiento, orden de entredicho ni decreto de algún tribunal, Entidad Gubernamental o de cualquier otro foro;



5.1.10    Ha cumplido y cumple con todas sus obligaciones bajo todo contrato, hipoteca, arrendamiento, fideicomiso u otro acuerdo del cual el Deudor es parte o bajo el cual cualquiera de sus propiedades o activos puedan verse afectadas;

5.1.11    Su estado de situación y el estado de ganancias y pérdidas que ha entregado al Banco, (i) son correctos y representan objetivamente su condición financiera y los resultados de sus operaciones; (ii) el Deudor no ha contraído obligaciones directas o contingentes, después de la fecha del estado de situación, que no hayan sido divulgadas al Banco por escrito o reflejadas a través de un estado de situación interino o anejo; (iii) tanto los estados como los estados interinos han sido preparados de acuerdo a los principios de contabilidad generalmente aceptados ("GAAP" por sus siglas en inglés) aplicados consistentemente durante todos los períodos que comprenden los mismos; (iv) no ha ocurrido un cambio sustancial adverso en los activos, pasivos, propiedades, negocios, condición financiera o cualesquier otra, o prospectos del Deudor desde la fecha de cierre de los estados de situación y de ganancias y pérdidas;

5.1.12 El Garantizador posee título de dominio sobre todos los bienes sobre los cuales ha constituido una hipoteca o que ha dado en Colateral al Banco, y tiene derecho a

6

Sr. Carlos Alvarez Méndez
Contrato de Linea de Crédito Rotativa

enajenarlos y gravarlos; y

5.1.13 Ha radicado todas las planillas de contribuciones que requieren las leyes y reglamentos aplicables, y ha pagado (o tiene un plan de pagos debidamente aprobado por las Entidades Gubernamentales correspondientes) todas las contribuciones sobre ingresos, contribuciones y retenciones patronales, contribuciones sobre la propiedad, patentes, arbitrios y cualquier otro cargo o penalidad atribuibles a las mismas que deba pagar o que hayan sido impuestos contra el Deudor o sobre sus propiedades por las Entidades Gubernamentales correspondientes.

## 6. **Convenios Afirmativos.**

6.1. Mientras se mantengan vigentes las obligaciones del Deudor bajo este Contrato y/o los otros Documentos de Préstamo, y mientras quede pendiente de pago cualquier balance de los Adelantos u otras obligaciones del Deudor bajo los términos de este Contrato o los demás Documentos de Préstamo, o mientras quede vigente cualquier obligación del Banco bajo este Contrato o el Pagaré de desembolsar cualquier Adelanto, el Deudor se compromete a lo siguiente:

6.1.1 Pagar puntualmente el principal, los intereses y cualquier otro cargo del Préstamo;

6.1.2 Llevar a cabo o gestionar, por su cuenta y a su cargo, todos los actos o cosas necesarias, presentes o futuras, requeridas bajo las leyes o reglamentos aplicables con relación al cumplimiento de sus obligaciones bajo los Documentos de Préstamo;



6.1.3. Pagar todas las contribuciones e impuestos que le sean aplicables a sus ingresos o ganancias, o sobre cualquiera de sus propiedades, o relacionadas con cualquiera de sus actividades o negocios (incluyendo retenciones y contribuciones sobre nómina), antes de la fecha en que dichas contribuciones e impuestos comiencen a devengar intereses, recargos o penalidades y se impongan multas, embargos, cargas y/o gravámenes similares por falta de pago. No obstante, el Deudor no vendrá obligado a pagar ninguna contribución o impuesto cuyo pago esté impugnando de buena fe y mediante el procedimiento correcto. Si el Deudor incumple esta obligación, el Banco podrá, a su entera opción, pagar tales contribuciones e impuestos sin necesidad de notificarle al Deudor y sin más consentimiento del Deudor que el presente consentimiento, en cuyo caso el Deudor reembolsará al Banco el monto de dicho desembolso tan pronto le sea requerido. El Banco podrá, además, y sin el previo aviso a o consentimiento de, el Deudor, cargar o debitar dichas sumas en cualquier cuenta o depósito que el Deudor mantenga en el Banco o con sus afiliadas;



6.1.4 Permitir que el Banco o cualquiera de sus agentes o representantes examinen, resuman y copien sus récords, registros y libros de contabilidad, y que visiten las propiedades del Deudor y que discutan con terceras personas los asuntos, finanzas y cuentas del Deudor de tiempo en tiempo y según sea razonable;

6.1.5 Notificar inmediatamente al Banco en caso de que surja cualquier reclamación, demanda o procedimiento llevado en su contra o, del cual el Deudor tenga conocimiento, que pudiera tener un Efecto Materialmente Adverso sobre las propiedades, negocios, operaciones y activos del Deudor, o sobre su condición financiera;

6.1.6 Mantener vigentes, renovar y proteger todos los derechos, poderes, privilegios, licencias, permisos y franquicias requeridas para continuar operando sus negocios

7

Sr. Carlos Alvarez Méndez
Contrato de Linea de Crédito Rotativa

incluyendo aquellas que emanen por contrato o aquellas requeridas por Entidades Gubernamentales;

6.1.7 Cumplir y observar todas las leyes y reglamentos aplicables, tanto federales como locales, incluyendo, pero sin limitarse a, las leyes y reglamentos aplicables en cuanto a asuntos laborales y ambientales, así como con cualquier ordenanza, regla o reglamento promulgado bajo dichas leyes y reglamentos;

6.1.8 Mantener la Cuenta corriente principal con el Banco;

6.1.9 Entregar al Banco dentro de noventa (90) días a partir del cierre de su año fiscal, su estado de situación y su estado de ganancias y pérdidas y superávit compilados, revisados o auditados, (según especifique o autorice el Banco a su absoluta discreción) por contadores públicos autorizados reconocidos y aceptables al Banco;

6.1.10 De ser aplicable, entregar al Banco dentro de los noventa (90) días siguientes al cierre de cada año fiscal, estados financieros personales, o de la entidad jurídica.

6.1.11 Entregar, en la forma y en las fechas en que así se lo requiera el Banco, un certificado o informe sobre envejecimiento de las cuentas a cobrar y de las cuentas a pagar, debidamente certificado como correcto por un oficial autorizado del Deudor, así como cualquier otra información relativa a sus operaciones, negocios, asuntos y situación financiera que el Banco pueda razonablemente exigirles;



6.1.12 Otorgar todos aquellos documentos, contratos, instrumentos o acuerdos que sean necesarios, a juicio del Banco, para llevar a cabo las transacciones contempladas en los Documentos de Préstamo;

6.1.13 Pagar o reembolsar al Banco tan pronto le sea requerido, los gastos relacionados con los honorarios de consultores ambientales y de abogados, estudios ambientales, acciones de remoción de contaminantes, restauración, mitigación y/o remediación ambiental y cualquier otro gasto que el Banco razonablemente entienda se tenga que incurrir como resultado de cualquiera de las situaciones mencionadas en la Sección 5.1(i) de este Contrato. El Banco podrá, además, y sin el previo consentimiento del Deudor, cargar o debitar dichas sumas en cualquier cuenta o depósito que el Deudor mantenga en el Banco o sus afiliadas;



6.1.14 Solicitar, mantener, conservar y renovar pólizas de seguro sobre todas sus propiedades y activos asegurables, debidamente asegurados contra riesgos, que según los usos y costumbres de la industria y el negocio en que se desenvuelven, en relación a propiedades y activos similares a los suyos radicados en el mismo sitio en que éstas radican, se acostumbren asegurar; y aquellas que de conformidad con los Documentos de Préstamo el Banco le requiera de tiempo en tiempo para cubrir otros riesgos, que provean cobertura suficiente (a juicio del Banco) y que sean las que acostumbran mantener compañías del tamaño y naturaleza similares a las del Deudor y que sean aceptables al Banco. Tales pólizas deberán contener un endoso o cesión a favor del Banco que sea aceptable a éste. Si el Deudor incumple esta obligación, el Banco podrá, a su entera opción, obtener y pagar tales pólizas y endosos sin necesidad de notificarle al Deudor y sin más consentimiento del Deudor que el presente consentimiento, en cuyo caso el Deudor reembolsará el monto total pagado por el Banco tan pronto le sea requerido. El Banco podrá, además, sin el previo consentimiento del Deudor, cargar o debitar dichas sumas en cualquier cuenta o depósito que el Deudor mantenga en el Banco

8

Sr. Carlos Alvarez Méndez
Contrato de Linea de Crédito Rotativa

o sus afiliadas;

6.1.15 Sin limitación alguna de lo requerido por este Contrato, mantener las pólizas de seguro por la Ley de Compensaciones por Accidentes de Trabajo y cualesquiera otras pólizas que pueda requerirse bajo las Leyes de cualquier jurisdicción en la cual pueda estar haciendo negocios, y mantendrá seguro de responsabilidad pública contra reclamaciones por daños personales, muerte o daños a la propiedad sufridos por terceras personas, en o por cualquier propiedad mueble o inmueble que le pertenezca.

6.1.16 Mantenerse en buen estado todas las propiedades que le pertenecen, incluyendo pero sin limitarse a, aquellas que forman parte de la Colateral, y realizar todas aquellas mejoras necesarias para conservarlas;

6.1.17 De aplicarle al Deudor las disposiciones de la ley federal conocida como ERISA ("Employee Retirement Income Security Act of 1974") según enmendada, el Deudor representa y garantiza que ha cumplido cabalmente con todas las disposiciones de la misma y que no ha ocurrido ni existe ningún evento reportable ("Reportable Event" según se define en ERISA) con respecto a cualquier plan de retiro o pensiones del Deudor que esté reglamentado por ERISA.

6.1.18 Utilizar los fondos provenientes del financiamiento aquí otorgado para los usos y propósitos que se mencionan en el Preámbulo del Contrato.

6.1.19 El Deudor autoriza al Banco a gestionar cualesquiera informe(s) crediticio de el Deudor cuyo costo será sufragado por el Banco.




## 7.  **Convenios Negativos**.

7.1   Mientras se mantengan vigentes las obligaciones del Deudor bajo este Contrato y/o los otros Documentos de Préstamo, y mientras quede pendiente de pago cualquier balance de los Adelantos u otras obligaciones del Deudor bajo los términos de este Contrato o los otros Documentos de Préstamo, o mientras quede vigente cualquier obligación del Banco bajo este Contrato o el Pagaré de desembolsar cualquier Adelanto, el Deudor se compromete a no hacer lo siguiente sin el previo consentimiento escrito del Banco, cuyo consentimiento no será denegado irrazonablemente:

7.1.1  Constituir, asumir o permitir que exista cualquier hipoteca, gravamen y/o carga sobre todo o cualquier porción de su propiedad, bienes o capital, existentes a la fecha de, o adquiridos con posterioridad a, la Fecha de Cierre y que sirvan como Colateral;

7.1.2  Asumir, garantizar, endosar o de cualquier manera responsabilizarse por las obligaciones de cualquier otra persona, entidad o corporación, existente o creada con posterioridad a la Fecha de Cierre, excepto por los endosos de instrumentos negociables para depósito o cobro o transacciones similares en el curso ordinario de su negocio;

7.1.3  Incurrir en Deuda adicional que no sea Deuda que normalmente se incurre en el curso ordinario de los negocios;

7.1.4  Vender, ceder, arrendar, permutar, transferir o de cualquier otra forma disponer de sus activos existentes a la fecha de, o adquiridos con posterioridad, a la Fecha de Cierre y de la propiedad que garantiza la colateral.

9

Sr. Carlos Alvarez Méndez
Contrato de Linea de Crédito Rotativa

**8.   Causas de Incumplimiento.**

8.1   Cada uno de los siguientes eventos constituirá una "**Causa de Incumplimiento**":

8.1.1   Que el Deudor incumpla con el pago de principal, intereses o cargos bajo el (los) Pagaré(s), o con el pago de cualquier otra suma adeudada al Banco bajo este Contrato o bajo cualquier otro Documento de Préstamo, en la fecha en que dicho pago venza; o

8.1.2   Que la validez, legalidad u otorgamiento de este Contrato, de(l) )los) Pagaré(s) o de cualquiera de los otros Documentos de Préstamo sea cuestionado por el Deudor, o el Deudor niegue(n) que tiene(n) responsabilidades u obligaciones bajo este Contrato, el Pagaré o cualquiera de los otros Documentos de Préstamo; o

8.1.3   Que el Deudor sea declarado insolvente o en quiebra, o admita por escrito su incapacidad para pagar sus deudas según éstas venzan, o haga una cesión de sus bienes para beneficio de sus acreedores; o el Deudor solicite o consienta a, el nombramiento de un custodio, síndico u oficial similar para administrar o custodiar o tomar posesión de la totalidad o una parte sustancial de sus bienes; o el Deudor instituya (por petición, solicitud, contestación, consentimiento, o de otra forma) cualquier procedimiento de quiebra, insolvencia, composición, reorganización, arreglo, reajuste de deudas o cualquier otro procedimiento similar bajo las leyes o reglamentos de cualquier jurisdicción; o que cualquier sentencia, orden, embargo, providencia judicial o administrativa, o remedio similar sea emitido contra cualquier propiedad o bien del Deudor y el mismo no sea dejado sin efecto, cancelado o sustituido por una fianza dentro de los treinta (30) días calendarios siguientes a su emisión; o



8.1.4.   Que el Deudor incumpla o viole cualquiera de sus obligaciones con el Banco o cualquiera de los términos, acuerdos, cláusulas, declaraciones, garantías o condiciones de su parte incluidos en este Contrato (pero sin incluir las violaciones cubiertas por la sección **Sección 8.1.1**), en los otros Documentos de Préstamo y/o en cualquier otro acuerdo o contrato con el Banco o instrumento entregado al Banco, y dicho incumplimiento o violación no se remediare dentro de los treinta (30) días calendarios siguientes a la notificación de dicho incumplimiento o violación; o



8.1.5.   Que cualquier declaración o garantía que haya hecho el Deudor en este Contrato, en cualquiera de los otros Documentos de Préstamo o en cualquier certificado, instrumento, contrato o declaración hecha u otorgada en relación con este Contrato o cualquiera de los otros Documentos de Préstamo, sea sustancialmente incorrecta; o

8.1.6   Que exista un gravamen o carga sobre la Colateral que no sea de las permitidas a la fecha de este contrato o de las creadas en beneficio del Banco para garantizar las obligaciones del Deudor bajo los Documentos de Préstamo; o

8.1.7   Que ocurra cualquier evento que cause que se acelere la fecha de vencimiento de cualquier otra Deuda (excluyendo el Préstamo) del Deudor; o

8.1.8   Que ocurra un Efecto Materialmente Adverso; o

8.1.9   Que el Deudor no utilice los fondos provenientes de este financiamiento, o parte de ellos, en los usos y propósitos que se mencionan en la **Sección 1.2.(a).2.** del Contrato; o

10

8.1.10 La radicación de cargos contra el Deudor o el recibo de alguna notificación por el Banco de alguna investigación gubernamental en relación con cualquier asunto que pueda resultar en la confiscación o incautación ("forfeiture") de bienes del Deudor.

8.2  En caso de que ocurra, o continúe ocurriendo, cualquier situación de las descritas en esta **Sección 8.1**, las obligaciones del Banco bajo este Contrato terminarán automáticamente y las sumas de principal, intereses y cargos acumulados sobre el Pagaré y todas las demás obligaciones del Deudor y el Garantizador bajo este Contrato y los otros Documentos del Préstamo serán, inmediatamente líquidas y exigibles, sin que se requiera acción, notificación, protesto, presentación, demanda o aviso de parte del Banco al Deudor o a ninguna otra persona natural o jurídica, todos los cuales se renuncian expresamente, excepto que en el caso de cualquier evento descrito en la **Sección 8.1.3**, las sumas de principal, intereses y cargos acumulados sobre el Pagaré y todas las demás obligaciones del Deudor y el Garantizador bajo este Contrato y los otros Documentos del Préstamo serán inmediatamente líquidas y exigibles, sin que se requiera acción, notificación, protesto, presentación, demanda o aviso de parte del Banco al Deudor o a ninguna otra persona natural o jurídica, todos los cuales se renuncian expresamente

## 9. **Remedios**

9.1  Remedios en General. En el caso que ocurra o continúe ocurriendo una o más de las Causas de Incumplimiento especificadas en la **Sección 8.1** del Contrato, el Banco podrá tomar cualquier acción en ley o equidad para cobrar las cantidades vencidas o por vencer bajo el Pagaré o para hacer cumplir las obligaciones, acuerdos o compromisos del Deudor bajo este Contrato o bajo cualquiera de los otros Documentos de Préstamo o bajo cualquier otro documento relacionado a este Contrato o dichos documentos.



9.2  Remedios Acumulativos. Los remedios y derechos aquí concedidos al Banco no se considerarán exclusivos de cualquier otro remedio o remedios disponibles; todos y cada uno de dichos remedios serán acumulativos y concurrentes y serán adicionales a cualquier otro remedio especificado en este Contrato o existente en ley o equidad. Cualquier demora u omisión en el ejercicio de cualquier derecho o acción basada en el incumplimiento del Deudor, o la omisión del Banco de insistir en el cumplimiento estricto de cualquiera de los acuerdos y compromisos del Deudor que se detallan en este Contrato o en los otros Documentos de Préstamo o de ejercitar cualquier derecho y/o remedio en caso de incumplimiento por el Deudor, no afectará ninguno de los antedichos derechos o acciones del Banco, ni se considerará o se tendrá por relevo o renuncia de los derechos a insistir, hacer cumplir, ejercitar o solicitar, mediante interdicto o cualquier otro remedio apropiado, en ley o equidad, el cumplimiento estricto por el Deudor con todos los compromisos, acuerdos y condiciones contenidos en este Contrato y en los otros Documentos de Préstamo, o del derecho del Banco a ejercitar cualquiera de dichos derechos o remedios si se repitiera el incumplimiento por parte del Deudor.



9.3  Renuncias. En caso de que el Deudor incumpla cualquier compromiso o acuerdo incluido en este Contrato o en cualquiera de los otros Documentos de Préstamo y sea relevado de tal obligación o acuerdo (cuyo relevo será efectivo solamente si se hace por escrito y está firmado por el Banco), dicho relevo se limitará a esa violación o evento en particular y no se considerará, bajo ninguna circunstancia, como un relevo del cumplimiento en cualquier otra situación.

11

Sr. Carlos Alvarez Méndez
Contrato de Linea de Crédito Rotativa

## 10. <u>Indemnización</u>.

10.1 El Deudor acuerda defender, indemnizar, librar de toda responsabilidad y proteger al Banco de toda reclamación, daño, sentencia, penalidad, costo y gasto (incluyendo aquellos gastos y honorarios de abogado que resulten por razón de haber ejercido el Banco sus derechos bajo esta cláusula) que surja, directa o indirectamente, de las actividades del Deudor, sus predecesores y sucesores en interés, o de aquellas terceras personas, naturales o jurídicas, con las que el Deudor sostenga una relación contractual, o que surjan, directa o indirectamente, de la violación por parte del Deudor, sus predecesores y sucesores en interés, o de aquellas terceras personas, naturales o jurídicas, con las que el Deudor sostenga una relación contractual, de cualquier ley o reglamento, incluyendo, pero sin limitarse a, cualquier ley o reglamento sobre protección ambiental, independientemente de que dichas reclamaciones fueren presentadas por una Entidad Gubernamental o cualquier otra persona, natural o jurídica. No obstante lo dispuesto en cualquier otro apartado del Contrato, las obligaciones del Deudor bajo esta cláusula de indemnización sobrevivirán la terminación de este Contrato.



10.2 El Deudor acuerda defender, indemnizar, librar de toda responsabilidad y proteger al Banco de toda demanda, litigación, acción, procedimiento administrativo, sentencia, reclamación, daños, costos o penalidades (incluyendo, sin limitación, honorarios de abogados y costas razonablemente incurridas) que se inste o se imponga en contra de o se incurra por el Deudor por cualquier motivo, debido a la presencia de sustancias tóxicas o peligrosas, así como de hidrocarburos, petróleo, aceites y sus derivados, según estos términos son definidos por las Leyes Ambientales, que afecten las propiedades del Deudor o que se originen o emanen de las propiedades del Deudor. El Deudor se compromete a cumplir fielmente con las Leyes Ambientales y a no depositar o causar que se deposite en sus propiedades sustancias tóxicas o peligrosas según éstas son definidas en dichas Leyes Ambientales, durante el término del presente Contrato. No obstante lo dispuesto en cualquier otro apartado de este Contrato, las obligaciones del Deudor bajo esta cláusula de indemnización sobrevivirán la terminación de este Contrato.

## 11. <u>Misceláneos</u>.



11.1 <u>Terminación</u>. De no existir más crédito disponible al Deudor bajo este Contrato o durante cualquier extensión o renovación del mismo, si el Deudor ha pagado al Banco la totalidad del principal e intereses bajo el Pagaré y todas las demás cantidades adeudadas al Banco bajo los Documentos de Préstamo, y si el Deudor está cumpliendo con sus deudas y obligaciones con las demás afiliadas del Banco, entonces todos los compromisos, acuerdos y otras obligaciones del Deudor se extinguirán y, en consecuencia, las propiedades del Deudor que hayan sido gravadas en virtud de este Contrato y los otros Documentos de Préstamo se entregarán al Deudor y/o los Contratos de Colateral serán entregados al Deudor para ser cancelados a su costo.

11.2 <u>Aviso de las Notificaciones</u>. Todas las notificaciones, requerimientos, instrucciones y otras comunicaciones requeridos bajo este Contrato se harán por escrito (incluyendo comunicaciones por facsímile) y serán enviados por correo o facsímile o entregadas a la mano a la parte a las siguientes direcciones:

DEUDOR:

12

Sr. Carlos Alvarez Méndez
Contrato de Linea de Crédito Rotativa

BANCO: EUROBANK
ATENCION: SUCURSAL SAN PATRICIO
CALL BOX 191009,
SAN JUAN PR 00919-1009

o a cualquier otra dirección que de tiempo en tiempo sea notificada por escrito a la otra parte, cumpliendo con los requisitos para notificación especificados en esta sección. Todas las antes mencionadas notificaciones, requerimientos, instrucciones y otras comunicaciones se considerarán efectivas en el momento en que se depositen en el correo, o se entreguen por máquina de facsímile, según sea el caso, dirigidos de la manera antes especificada.

11.3 <u>Pago de Gastos, Costas, Etc</u>. (a) El Deudor acuerda pagar a la presentacion los gastos y honorarios de abogado, tasadores, peritos, consultores, y auditores con relacion a la preparación, otorgamiento y entrega de este Contrato, el Pagaré, los otros Documentos de Préstamo, y cualquier otro instrumento o documento al cual se hace referencia o se relaciona con este Contrato, el Pagaré y los otros Documentos de Prestamo, o cualquier enmienda a estos.

(b). El Deudor acuerda pagar a la presentación los gastos y honorarios de abogado, tasadores, peritos, consultores, y auditores en que incurra el Banco por razón de una Causa de Incumplimiento, incluyendo el pagar todas las costas, gastos y desembolsos en que incurra el Banco con relación al cobro de las obligaciones del Deudor bajo este Contrato o cualquier otro Documento de Préstamo, ya sea por via judicial o en alguna otra forma, y ademas, conviene pagar los honorarios de abogados del Banco fijando con tal fin como suma líquida una cantidad igual al quince (15%) del balance insoluta de principal del préstamo en el momento de dicha Causa de Incumplimiento, la cual suma sera exigible por el sólo hecho de la radicacion de la demanda o reclamacion bajo la Ley de Quiebra.



11.4   <u>Cesión; Enmienda</u>.  El Deudor no podrá ceder sus derechos y obligaciones bajo este Contrato. No obstante, el Banco podrá ceder sus derechos y obligaciones bajo este Contrato, total o parcialmente, sin el consentimiento del Deudor y todos los términos y disposiciones del mismo beneficiarán de la misma forma a sus sucesores y cesionarios. Este Contrato no podrá ser alterado o enmendado a menos que sea a través de otro documento o acuerdo escrito otorgado por ambas partes.



11.5   <u>Ley que Rige</u>.   Este Contrato, el Pagaré y todos los otros Documentos de Préstamo se regirán e interpretarán de acuerdo con las leyes del Estado Libre Asociado de Puerto Rico.

11.6   <u>Separación de las Cláusulas</u>.   Si alguna cláusula de este Contrato resultare inválida, ilegal o no pudiera hacerse valer en Puerto Rico, no se afectará por ello la validez y efectividad de las demás cláusulas y condiciones del Contrato ni se afectará la validez y efectividad de dicha cláusula y las demás cláusulas en cualquier otra jurisdicción en que la cláusula se considere válida.

11.7   <u>Encabezamientos</u>.   Los encabezamientos de las secciones y cláusulas en este documento se incluyen para referencia y conveniencia y no constituirán parte alguna de este Contrato.  Las palabras utilizadas en este Contrato se interpretarán en el género o número que las circunstancias ameriten.

13

Sr. Carlos Alvarez Méndez<br>
Contrato de Linea de Crédito Rotativa

11.8   <u>Derecho de Compensación</u>.  Nada de lo dispuesto en este Contrato se considerará como una renuncia al derecho de compensación ("set-off") que pueda tener el Banco conforme a las leyes aplicables.

11.9   <u>Renuncia a Juicio por Jurado</u>. El Banco, el Deudor renuncia a cualquier derecho que tengan a la celebración de un juicio por jurado en cualquier acción o procedimiento que se inste para ejercer o defender sus respectivos derechos bajo, o que de alguna manera se relacionen con, este Contrato, el Pagaré y los otros Documentos de Préstamo.

11.10 <u>Jurisdicción</u>.  El Deudor acuerda someterse a la jurisdicción de los tribunales estatales de Puerto Rico o el Tribunal de Distrito Federal para el Distrito de Puerto Rico.

**POR TODO LO CUAL,** las partes otorgan este Contrato, en San Juan, Puerto Rico en la fecha indicada al principio del mismo.

**DEUDOR:**

Por:_____
**Nombre: CARLOS ALVAREZ MENDEZ**

**CORPORACION GARANTIZADORA: INVERSIONES ALVEL, INC.**

Por:_____
**Nombre: CARLOS ALVAREZ MENDEZ**
**Título: PRESIDENTE**

**BANCO:EUROBANK**

Por:_____
**Nombre: ALFREDO AMADOR AMADOR**
**Título: FIRMA AUTORIZADA**

TESTIMONIO NUMERO____26010____

Reconocido y Suscrito ante mi por **CARLOS ALVAREZ MENDEZ, DEUDOR Y COMO PRESIDENTE DE INVERSIONES ALVEL, INC., CORPORACION GARANTIZADORA; ALFREDO AMADOR AMADOR, EN REPRESENTACION DE EUROBANK,** de las circunstancias personales antes indicadas, Puerto Rico, a quien doy fe de conocer personalmente, en San Juan, Puerto Rico, hoy ____28____ de marzo de 2008.

NOTARIO PUBLICO

14

Sr. Carlos Alvarez Méndez
Contrato de Linea de Crédito Rotativa

### DEFINICIONES

**Definiciones.** Según se utilizan en este Contrato, las siguientes palabras y términos tendrán los respectivos significados que se detallan en adelante, excepto cuando el contexto en que se utilicen claramente indique lo contrario:

**"Activo"**, "Activos" tendrá el significado que se le da a este término según los Principios de Contabilidad Generalmente Aceptados en Estados Unidos de América y Puerto Rico.

**"Año Fiscal"** significa el periodo de doce meses o de 52 semanas consecutivas, según sea el caso, que se utiliza para preparar los informes financieros y contributivos cada año.

**"Colateral"** significa colectivamente aquellos Activos sobre los cuales se ha obtenido un gravamen para responder al Banco por las obligaciones del Deudor bajo este Contrato y los demás Documentos de Préstamo y que se detallan en el Articulo IV del Contrato.

**"Contratos de Colateral"** significa los contratos y acuerdos mediante los cuales se crean gravámenes sobre la Colateral.

**"Cuenta Corriente"** significa cualquier cuenta a la vista, a plazo fijo, de ahorro o de naturaleza similar que mantenga el Deudor con el Banco con el propósito de realizar los pagos sobre el Préstamo, incluyendo cualquier cargo, recargo, penalidad o costo relacionado.

**"Deuda"** significa (a) todas las obligaciones o compromisos en los que ha incurrido el Deudor para obtener préstamos, (b) todas las obligaciones del Deudor para cualquier compraventa de precio diferido de bienes o servicios (que no sean cuentas por cobrar y gastos acumulados los cuales han sido incurridos en el curso ordinario de su negocio), (c) todas las obligaciones del Deudor evidenciadas por pagarés, bonos, u otros instrumentos similares, (d) todas las obligaciones del Deudor que surjan de un contrato de venta condicional u otro contrato que conlleve la retención de titularidad por el acreedor, relacionados con bienes adquiridos por el Deudor (no empece a que los derechos del vendedor o acreedor estén limitados a la reposesión o venta del bien en caso de incumplimiento), (e) el principal de todas las obligaciones del Deudor como arrendatario bajo contratos de arrendamiento que puedan ser catalogados, conforme a los Principios de Contabilidad Generalmente Aceptados, como arrendamientos financieros, cuyo principal está o será capitalizado en el estado de activos y pasivos conforme a Principios de Contabilidad Generalmente Aceptados, (f) todas las obligaciones, contingentes o no contingentes, del Deudor, bajo cartas de crédito u otras facilidades similares, (g) todas las obligaciones del Deudor de adquirir, redimir, repagar, o cumplir con cualquier otro tipo de pago con relación a cualquier tipo de acciones de capital u otro tipo de evidencia de titularidad o de interés propietario sobre el Deudor o cualquier tercero, y (h) todas las deudas anteriormente señaladas en las cláuulas (a) a la (g) de terceras personas que hayan sido directa o indirectamente garantizadas por el Deudor.



**"Día Laborable"** significa cualquier día que no sea un sábado, domingo o día en que los bancos se les requiere o permite cerrar bajo las leyes o reglamentos aplicables del Estado Libre Asociado de Puerto Rico o la Ciudad de New York, Estado de New York.



**"Documentos de Préstamo"** significa el Contrato de Préstamo, el Pagaré, los Contratos de Colateral, y todos y cualesquiera otros documentos emitidos, otorgados y entregados al Banco relacionados con el Préstamo, incluyendo cualquier enmienda futura de los mismos.

**"Entidad Gubernamental"** significa el Estado Libre Asociado de Puerto Rico, los Estados Unidos de América, los estados de los Estados Unidos de América, países extranjeros o cualquier tribunal, agencia, departamento, corporación pública o subdivisión política de cualquiera de éstos.

**"Efecto Materialmente Adverso"** significará un evento, situación o condición que tenga un impacto negativo significativo sobre (i) la propiedad, negocio, operación o estabilidad financiera o económica del Deudor, incluyendo, pero no limitado a, efectos o eventos que puedan afectar el valor en el mercado del Deudor, u ocasionar pérdidas financieras u ocasionar deudas, gastos o cargos no recurrentes significativos; (ii) la capacidad del Deudor de cumplir con sus obligaciones; (iii) el valor de la Colateral; (iv) la validez o ejecución de acuerdo con los términos de este Contrato y/o los otros Documentos de Préstamo ó (v) los derechos y remedios del Banco bajo este Contrato y/o los otros Documentos de Préstamo y/o la muerte de uno o más de los que componen el Deudor..

**"Fecha de Cierre"** significa la fecha en que el Banco y el Deudor firman este Contrato de Préstamo.

**"Fecha de Pago"** significa la fecha en que el Deudor debe hacer los pagos periódicos de principal y/o interés sobre el Préstamo.

**"Fecha de Vencimiento"** significa (1) la fecha especificada en la **Sección 2.1** del Contrato ó (2) la fecha en que conforme a este acuerdo, el Banco declare vencido el Préstamo, lo que ocurra primero.

15

Sr. Carlos Alvarez Méndez
Contrato de Linea de Crédito Rotativa

"**Leyes Ambientales**" significa las diferentes leyes ambientales federales, estatales y locales aplicables al Deudor, sus operaciones y Activos.

"**Obligaciones**" significa, colectivamente, (i) el principal e intereses a la Tasa de Interés Aplicable sobre el Préstamo, los cargos dispuestos en el Contrato, y los créditos para costas, gastos y honorarios de abogados, y cualesquiera otras cantidades que de tiempo en tiempo se adeuden al Banco por el Deudor bajo el Préstamo, (ii) y cualquier otra obligación de cualquier clase y naturaleza existente o futura (esté vencida o sin vencer, contingente o liquidada) del Deudor para con el Banco bajo este Contrato, los otros Documentos del Préstamo y/o cualquier otro contrato relacionado con el Préstamo.

"**Pagaré**" significa el instrumento emitido por el Deudor en el que se evidencia su obligación de pagar el Préstamo.

"**Principios de Contabilidad Generalmente Aceptados**" significa los principios de contabilidad aceptados y consistentemente aplicados y mantenidos durante un periodo indicado y consistentes con la práctica financiera anterior del Deudor, excepto por los cambio dictados por el "Financial Accounting Standards Board" o una autoridad en asuntos de contabilidad similar o de igual reputación.

"**Tasa Base**" ("Eurobank Prime Rate") significa la tasa de interés anual cargada por el Citibank N.A. como su Tasa Base ("prime rate") (en caso de que por alguna razón el "Citibank N.A." deje de publicar su Tasa Base ("prime rate") se utilizará la Tasa Base ("prime rate") que escoja el Banco entre las tasas bases ("prime rate") que publican los llamados "money center banks" cuyas oficinas principales están en la Ciudad de Nueva York, Estado de Nueva York, ajustable en forma variable con cada cambio en dicha Tasa Base ("prime rate"). Dicha Tasa Base ("prime rate") es una tasa de referencia y no representa la tasa más baja o mejor ofrecida a cliente alguno en particular.





16